# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

AIRTEX MANUFACTURING, LLLP,

        *Plaintiff,*

  vs.

BONESO BROTHERS CONSTRUCTION, INC.,

        *Defendant.*

Case No. 2:19-cv-02269-EFM-JPO

BONESO BROTHERS CONSTRUCTION, INC.,

        *Counterclaim-Plaintiff,*

  vs.

AIRTEX MANUFACTURING, LLLP,

        *Counterclaim-Defendant.*

## MEMORANDUM AND ORDER

At issue before the Court are multiple claims pertaining to breach of contract between a sub-contractor and a sub-sub-contractor. Plaintiff Airtex Manufacturing, LLLP ("Airtex") has brought alternative claims for breach of contract and unjust enrichment against Defendant Boneso Brothers Construction, Inc. ("Boneso"). In return, Boneso has counterclaimed against Airtex for

breach of contract, negligence, express indemnity, breach of Implied Warranty of Merchantability, and breach of Implied Warranty of Fitness for a Particular Purpose.  Boneso also requested declaratory judgment regarding many of the relevant issues.  Boneso has filed a Motion to Dismiss for Failure to Join an Indispensable Party, or in the alternative to Transfer Venue (Doc. 40).  Airtex has filed a Motion to Dismiss for Failure to State a Claim regarding Boneso's negligence and express indemnity claims (Doc. 49). [1]  For the reasons stated in more detail below, the Court denies Boneso's motions while granting Airtex's motion in part and denying it in part.

## I.    Factual and Procedural Background[2]

Airtex is a worldwide manufacturer with its principal place of business in Kansas.  Boneso is a family-owned construction company based entirely in California.  Boneso does not advertise or seek business in Kansas.  On September 19, Boneso contracted with Watts Constructors, LLC ("Watts") as a subcontractor to work on a satellite communications facility (known as "the Project") for the United States Army Corps of Engineers ("USACE").  In the course of doing so, Boneso decided to enter into an agreement with Airtex after being approached by an Airtex representative.  The parties agreed that Airtex would provide HVAC units for the site in exchange for $1,448,489.40.

To put the agreement in writing as an enforceable contract, Boneso sent a Purchase Order ("PO") to Airtex.  The PO included an indemnity clause stating that "[s]eller . . . will indemnify,

---

[1] Airtex also filed a Motion for Oral Argument (Doc. 58) on the aforementioned motions.  D. Kan. Rule 7.2. provides: "The [C]ourt *may* set any motion for oral argument or hearing at the request of a party or on its own initiative." (emphasis added).  The Court concludes that oral argument will not materially assist it in ruling on these motions.  *See Trujillo v. City of Newton*, 2013 WL 1191222, at *1 n.1 (D. Kan. 2013) ("The Court does not find that oral argument would materially assist the Court in deciding this motion, so Plaintiff's request is denied.").  Exercising its discretion, the Court denies the motion for oral argument.

[2] The facts are taken from the record and from the parties' complaints, which are taken as true for the purposes of all Motions to Dismiss.

hold harmless and defend Buyer and Owner against any and all losses, damages, liabilities and claims of any kind whatsoever, including actual attorneys' fees . . . which arise directly or indirectly out of their performance or nonperformance of this purchase order."   Furthermore, the PO required California law to apply to any disputes between the parties.[3]  Boneso alleges that the PO is the contract between the parties.   However, Airtex sent back a Purchase Order Acknowledgment ("POA"), which included entirely different provisions, such as applying Kansas law and requiring Boneso to indemnify Airtex. Airtex alleges the POA, not the PO, formed "the Contract" between the parties.[4]

Airtex designed and manufactured the HVAC units at its facility in Kansas.  Boneso contends that Airtex was the first to breach the contract.  Airtex's HVAC units were not seismic tested, requiring Boneso to expend $75,000 to shake test them as required by Boneso's contract with Watts.  The test took place in California.  Other problems with the HVAC units caused Boneso to incur over $200,000 of damages.  The failure of the HVAC units to comply with specifications, and the resulting delays, caused Watts to withhold part of Boneso's payment for its work.  Because the HVAC units did not comply with USACE's specifications, USACE has asserted liquidated damages claims against Watts.  Watts withheld a portion of the funds with which Boneso was to pay Airtex, stating that Watts would likely pursue litigation against Boneso.  Subsequently, Boneso withheld Airtex's payment, claiming they performed unsatisfactorily.

---

[3] Doc. 40, Ex. 4, at 3.

[4] Doc. 1, Ex. 1, at 1–5.

Airtex brought a claim against Boneso for breach of contract and, alternatively, unjust enrichment in the amount of "$1,347,432 plus state/local taxes in the amount of $97,682."[5]  Boneso counterclaimed for breach of contract, negligence, express indemnity, breach of Implied Warranty of Merchantability, and breach of Implied Warranty of Fitness for a Particular Purpose.  Boneso requested declaratory judgment regarding whether the PO is the contract between the parties and whether Airtex must indemnify Boneso for any liability Boneso incurs.

Thereafter, Boneso brought a Motion to Dismiss for Failure to Join an Indispensable Party, along with an alternative Motion to Transfer Venue.  Boneso identified Watts as the indispensable party to be joined.

Shortly before filing the motion, Boneso identified nine more California-based witnesses, adding up to 28 witnesses overall between the parties.[6]  Of those, five reside in Kansas, two in Pennsylvania, one in Indiana, and the rest in either California or Washington.  In its Motion, Boneso further relies in part on the comparative congestion in the Kansas and California federal district courts.  In December 2019, the Kansas U.S. District Court's median time from filing to disposition is 22 months, while the median time from filing to trial is 26.9 months.  The United States District Court for the Central District of California's statistics are 4.8 months and 22.3 months respectively.  Per judge, Kansas has 366 pending cases and 354 weighted filings.  Comparatively, California has 525 pending cases and 692 weighted filings.[7]

---

[5] Doc. 52, at 4.

[6] Airtex noted that six of Boneso's employees are cumulative in that Boneso claims they will each testify regarding only "general knowledge" of the contract, scope of work, and claims between the parties.  Doc. 52, at 31.

[7] Boneso asked the Court to recalculate the number of district court cases in Kansas to account for Judge Murguia's resignation.  However, Boneso did not provide any evidence showing how Judge Murguia's resignation affected the congestion of the Kansas federal district courts.  This Court will rely only upon the evidence provided.

Lastly, Airtex brought a Motion to Dismiss Boneso's negligence, indemnity, and declaratory judgment claims. Specifically, Airtex contends that Boneso's negligence claim fails to show that Airtex breached a legal duty separate from its contractual one. Furthermore, Airtex argues that Boneso's indemnity and declaratory judgment claims are unripe.

## II.   Legal Standards

Rule 12(b)(7) of the Federal Rules of Civil Procedure "permits a court to dismiss a case if a plaintiff has failed to join a necessary and indispensable party."[8] Courts must accept all facts alleged in the complaint as true when reviewing a 12(b)(7) Motion to Dismiss.[9] However, courts may rely on evidence outside of the pleadings in ruling on the motion.[10] To dismiss a case under Rule 12(b)(7), courts apply a three-step analysis.[11] A court must first determine if a party is necessary.[12] If so, "the court then considers whether joinder is feasible—i.e., whether the person is subject to service of process and whether joinder will deprive the court of subject matter jurisdiction."[13] If a party is necessary and joinder is not feasible, the court must determine "in equity and good conscience" whether the party is indispensable.[14] Upon finding that the party is indispensable, the court must then dismiss the case.[15]

---

[8] *Green v. Blake*, 2019 WL 5485316, at *2 (D. Kan. 2019).

[9] *See Rezac Livestock Comm'n Co., Inc. v. Dinsdale Bros., Inc.*, 2016 WL 4990190, at *1 (D. Kan. 2016) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1359 (3d ed. 1998)).

[10] *See Citizen Band Potawatomi Indian Tribe of Oklahoma v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994).

[11] *Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 997 (10th Cir. 2001).

[12] *Id.*

[13] *Ambac Assurance Corp. v. Fort Leavenworth Frontier Heritage Communities, II, LLC*, 315 F.R.D. 601, 606 (D. Kan. 2016).

[14] Fed. R. Civ. Pro. 19(b).

[15] *Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.*, 94 F.3d 1407, 1411 (10th Cir. 1996).

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[16]   Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[17]   A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[18]   The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[19]   Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[20]   Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[21]   If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' "[22]

---

[16] Fed. R. Civ. P. 12(b)(6).

[17] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[18] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[19] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[20] *Iqbal*, 556 U.S. at 678–79.

[21] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[22] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

### III.    Analysis

**A.    Boneso's motions**

Boneso brings a Motion to Dismiss and alternatively a Motion to Transfer Venue, requesting that the Court transfer the case to the Central district of California.  As Boneso filed its alternative motions first, the Court will address Boneso's motions before proceeding to Airtex's Motion to Dismiss.

*1.    Boneso's 12(b)(7) claim to dismiss for failure to join a party.*

The Court's first step is to determine whether Watts is a necessary party to the current case.[23]  The three ways to determine whether a non-party is necessary to the suit are:

> (1) whether complete relief would be available to the parties already in the suit, (2) whether the absent party has an interest related to the suit which as a practical matter would be impaired, and (3) whether a party already in the suit would be subjected to a substantial risk of multiple or inconsistent obligations.[24]

Complete relief is available to the current parties if a non-party's absence "does not prevent the plaintiffs from receiving their requested . . . relief."[25]  The court need not concern itself with relief sought by non-parties in making this determination.[26]  Regarding the second way to find a necessary party, " [t]he proponent of a motion to dismiss under 12(b)(7) has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the

---

[23] *See Salt Lake Tribune Pub. Co., LLC v. AT & T Corp.*, 320 F.3d 1081, 1098 (10th Cir. 2003) ("Because we conclude that [non-party] is not a necessary party, it cannot be an indispensable one and we therefore need not consider Rule 19(b).").

[24] *Rishell*, 94 F.3d at 1411 (summarizing Fed. R. Civ. Pro. Rule 19(a)).

[25] *Sac and Fox Nation of Missouri v. Norton*, 240 F.3d 1250, 1258 (10th Cir. 2001); *see also Salt Lake Tribune*, 320 F.3d at 1097 (holding that requested relief not only way to grant complete relief to plaintiffs).

[26] *See Champagne v. City of Kansas City*, 157 F.R.D. 66, 67 (D. Kan. 1994) ("Defendant's assertion that all persons whose claims are identical to the plaintiffs should be joined is not within the meaning of complete relief.").

protection of that interest will be impaired by the absence.' "[27]  However, the possibility of future litigation against the defendant, even considering the financial burden, is not enough by itself to warrant declaring a party necessary to the current suit.[28]

The Court first considers if complete relief is available to the parties already in the suit. Concerning Airtex's alternative complaints of breach of contract or unjust enrichment, Airtex only requests monetary relief.  Boneso argues that the Court cannot afford complete relief even if Airtex were to win because Watts has not yet paid Boneso for Airtex's work.  However, this argument does not speak to whether Airtex can recover its requested relief from Boneso.  Airtex does not ask for specific funds, only specific amounts.  Even if Watts were joined, that would not affect Boneso's current financial state, a topic on which Boneso offers no evidence.  Likewise, Boneso requests only monetary relief for its breach of contract counterclaim.  If Boneso successfully defended itself against Airtex's claim and won on its own counterclaim, Watts' presence would not make the slightest difference to Boneso's relief.  Therefore, Boneso has failed to demonstrate that the Court cannot provide complete relief in the current case.

Boneso also argues that it cannot succeed on its indemnification claim against Airtex unless Watts joins the parties by asserting claims against Boneso.  As explained below in greater detail, Boneso's claims concerning Airtex's liability to Boneso for any claims that Watts may assert are dismissed as unripe for adjudication.  Similarly, because Boneso's negligence claim is dismissed,

---

[27] *Autry v. Motel*, 2010 WL 5137541, at *1 (D. Kan. 2010) (quoting *Citizen Band Potawatomi Indian Tribe of Okla. v. Collier*, 17 F.3d 1292, 1293 (10th Cir.1994)).

[28] *See Champagne*, 157 F.R.D. at 68 ("While the court recognizes that joining the absent paramedics in this action might eliminate the possibility that there would be future litigation against this defendant that is insufficient to warrant compulsory joinder here.  The court does not believe that substantial cost savings would be effected by forcing these individuals into this case.").

the Court need not consider whether Airtex's statement of comparative fault requires Watts' joinder.

In its initial brief, Boneso limits its argument to whether the Court can provide complete relief.  Boneso neither identifies any interest that Watts may have in the litigation nor offers evidence showing any interest.  In its Reply (Doc. 56), Boneso argues for the first time and without elaboration that it could be subject to double or multiple obligations if Watts were to bring and succeed on a claim against it.  "The general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief."[29]  Therefore, the Court will not consider Boneso's argument.  Because Boneso has failed to demonstrate that Watts is necessary party, the Court denies Boneso's Motion to Dismiss for Failure to Join a Party.[30]

> ### 2.    *Boneso's Motion to Transfer Venue*

In the alternative, Boneso requests that the Court transfer venue to the U.S. District Court for the Central or Northern Districts of California.  Boneso argues that transfer of venue "is necessary for the convenience of the parties, fairness, and in the interests of justice."[31]

28 U.S.C. § 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Courts employ "broad discretion in determining whether to

---

[29] *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) (quotations and citation omitted); *see also Clark v. City of Shawnee, Kansas*, 2017 WL 698499, at *1 (D. Kan. 2017) (applying *Reedy* to district courts).

[30] The Court need not consider whether Watts must be joined due to Airtex's Designation of Comparative Fault (Doc. 34) because, as discussed below in greater detail, Boneso's negligence counterclaim is dismissed. Therefore, any comparative faults designations are irrelevant.

[31] Doc. 40, at 11.

grant a motion to transfer and [weigh] each factor on a case-by-case basis."[32]   The Tenth Circuit

has set out a list of nine factors for district courts to weigh when considering whether to transfer

venue.[33]   They are:

> (1) the plaintiff's choice of forum; (2) the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; (3) the cost of making the necessary proof, (4) questions as to the enforceability of a judgment if one is obtained; (5) relative advantages and obstacles to a fair trial; (6) difficulties that may arise from congested dockets; (7) the possibility of the existence of questions arising in the area of conflict of laws; (8) the advantage of having a local court determine questions of local law; and (9) all other considerations of a practical nature that make a trial easy, expeditious and economical.[34]

Under these factors, the "party moving to transfer a case pursuant to § 1404(a) bears the burden of

establishing that the existing forum is inconvenient."[35]   However, a party may not merely shift the

inconvenience from one party to the other.[36]

> a.   Plaintiff's choice of forum

Generally, the plaintiff's choice of forum constitutes a very weighty factor in deciding

whether to transfer venue.[37]   However, courts give less weight to a plaintiff's choice of forum if a

"[p]laintiff is not a resident of the forum or if the events giving rise to the lawsuit 'have no material

---

[32] *All Brands Distribution, LLC v. Vital Pharm., Inc.*, 2019 WL 4958205, at *1 (D. Kan. 2019).

[33] *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991).

[34] *Cargill Meat Sols. Corp. v. Premium Beef Feeders*, 2014 WL 172197, at *5 (D. Kan. 2014) (listing *Chrysler* factors).

[35] *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (quotations and citation omitted); *see also Pehr v. Sunbeam Plastics Corp.*, 874 F. Supp. 317, 321 (D. Kan. 1995) (holding movant must employ evidence in meeting its burden).

[36] *Employers*, 618 F.3d at 1167.

[37] *See id.* ("Unless the balance is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed.") (quotations and citation omitted).

relation or significant connection' to the chosen forum."[38]   A corporation is a resident of "the judicial district in which it maintains its principal place of business."[39]

Here, the parties disagree on whether the facts surrounding this lawsuit materially relate to Kansas.  Boneso rightfully asserts that the case connects significantly to California.  The Project, shake test, and installation of the HVAC units took place in California.  The bulk of Boneso's communication with Airtex went through Airtex's California officer.  Boneso drafted the PO in California.  Boneso further asserts that nothing connects this case to Kansas except that Kansas is Airtex's principal place of business and Airtex shipped the HVAC units from there.

In contrast, Airtex argues that the case has a significant connection to Kansas by focusing on "Airtex's scope of work on the Project (which is the basis for this lawsuit)."[40]  Along with the manufacturing and shipping of the HVAC units, Airtex's corporate decisions regarding the Project occurred in Kansas.  Airtex drafted the POA in Kansas.  Finally, Airtex has its main place of business in Kansas.  The Court finds that when considering the facts relating to Kansas that occurred prior to bringing this lawsuit, as well as Airtex's residency here, the plaintiff's choice of forum maintains its considerable weight.  Therefore, this factors heavily favors retaining venue.

  b.   Witness convenience

This Court has previously held that "[i]n deciding a motion to transfer under § 1404(a) the convenience of witnesses is the most important factor."[41]  The burden is on the movant to bring

---

[38] *Escalante v. Williams*, 2018 WL 4341268, at *2 (D. Kan. 2018) (quoting *Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993)).

[39] 28 U.S. Code § 1391(c)(2).

[40] Doc. 52, at 29.

[41] *McDermed v. Marian Clinic, Inc.*, 2014 WL 6819407, at *2 (D. Kan. 2014).

forward evidence demonstrating inconvenience.[42]   To meet its burden, "the movant must (1) identify the witnesses and their locations; (2) indicate the quality or materiality of their testimony; and (3) show that any such witnesses were unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary."[43]

Courts must consider not just the number of witnesses but also whether their testimony is material in weighing inconvenience.[44]   In today's society of live video conferencing, "[t]he fact that most witnesses live outside of Kansas does not weigh heavily when establishing that a forum is inconvenient."[45]   If either parties' witnesses would experience inconvenience if the opposite party prevailed, courts are less inclined weigh this factor in movant's favor.[46]

Boneso has met its burden in meeting the first two elements of the witness convenience test.   Together, the parties identify 28 witnesses.   Five reside in Kansas, one in Indiana, two in Pennsylvania, and the rest in either California or Washington.   Certainly, transferring venue to California would make it more convenient for witnesses living there to testify in person.[47]   Boneso

---

[42] *See generally Employers*, 618 F.3d at 1169.

[43] *Id.* (quotations, alterations, and citations omitted).

[44] *Id.* (quotations and citation omitted).

[45] *McRae v. Tautachrome, Inc.*, 2018 WL 3068112, at *6 (D. Kan. 2018).

[46] *See Lone Star Steakhouse & Saloon, Inc. v. Adams*, 169 F. Supp. 2d 1197, 1203 (D. Kan. 2001); *see also Meek & Assocs., Inc. v. First Union Ins. Grp.*, 2001 WL 58839, at *4 (D. Kan. 2001) ("Changing the forum to accommodate the party with the most potential witnesses results merely in shifting the burden from one party to the other and is an improper reason to transfer venue.").

[47] Airtex invites the Court to question Boneso's motives in adding nine California residents as witnesses shortly before filing this motion.  Without precedent allowing courts to question a party's reasoning for supplementing witness disclosure, the Court declines to do so.

cannot compel the California witnesses to attend the trail.[48]  Furthermore, the HVAC units under discussion are in California, should the parties require their inspection.  Even though Airtex points out that some of Boneso's witnesses appear unnecessarily cumulative, there is no dispute about whether the testimony of any individual is material.

However, Boneso fails to satisfy the third element with evidence.  Although Boneso asserts that certain witnesses would likely be unwilling to attend trial in Kansas, it does not offer any evidence supporting its assertion.  Likewise, its statement that the use of depositions would cause the jury to "los[e] interest quickly" is speculative and unsupported.[49]  Boneso does not even contend that the use of the compulsory process is necessary to ensure witness testimony.  Boneso's argument simply relies on the fact that most of the witnesses live in California.  In the modern age, that argument does not weigh heavily in showing that Kansas is an inconvenient forum.  Without evidence supporting Boneso's assertions, transferring venue to California would merely shift the inconvenience onto Airtex.  Therefore, this factor does not weigh in favor of granting Boneso's Motion to Transfer Venue.

        c.        Cost of making necessary proof

Boneso highlights that a number of witnesses, the HVAC units, the Project, and the location of the shake test are all in in California.  Moreover, Boneso asks the Court to consider the potential travel expenses involved in flying attorneys back and forth between Kansas and California.  However, Boneso does not provide evidence of what those travel expenses would be.  Without

---

[48] *See* Fed. R. Civ. Pro. 45(c)(1)(A) ("A subpoena may command a person to attend a trial, hearing, or deposition only as follows: within 100 miles of where the person resides, is employed, or regularly transacts business in person.").

[49] Doc. 40, at 17.

such evidence, this Court cannot find that this factor weighs in favor of transferring venue to California.[50]  Therefore, this factor is neutral.

        d.        Enforceability of judgment *and* fair trial considerations

The Court will consider these factors together.  Here, neither party contests that a judgment is enforceable in both Kansas and California.  Similarly, Boneso does not identify any obstacles or advantages to a fair trial pertaining to either venue.  Therefore, these factors are neutral.

        e.        Congested court dockets

When comparing docket congestion, courts must consider "median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge."[51]  As of December 2019, the Kansas U.S. District Court's median time from filing to disposition is 22 months, while the median time from filing to trial is 26.9 months.  The Central District Court of California's statistics are 4.8 months and 22.3 months respectively.  Per judge, Kansas has 366 pending cases and 354 weighted filings.  Comparatively, California has 525 pending cases and 692 weighted filings.  Two of the factors show California as more congested and two show Kansas as more congested.  Therefore, this factor is neutral in determining whether to transfer venue.

---

[50] *Employers*, 618 F.3d at 1169 (10th Cir. 2010); *see also Quorum Health Res., LLC v. Lexington Ins. Co.*, 2012 WL 769744, at *5 (D.N.M. 2012) (holding even though only two witnesses were in chosen forum, costs of making necessary proof did not weigh in favor of transferring venue); *Cont'l Res., Inc. v. Guderjahn Trucking, Inc.*, 2013 WL 593398, at *9 (W.D. Okla. 2013) ("Defendant [has] not attempted to quantify the potential costs of litigating the case in Oklahoma.").

[51] *Employers*, 618 F.3d at 1169.

f.      Possible conflict of laws

Generally, "courts prefer the action to be adjudicated by a court sitting in the state that provides the governing substantive law."[52]   However, when federal judges rule on "relatively simple legal issues," this factor receives significantly less weight.[53]

The parties agree that the Court will have to engage in a "battle of the forms" analysis to determine whether the POA or the PO constitutes the contract between the parties.[54]   Boneso argues without opposition that California law will apply to deciding that issue.   Therefore, this factor weighs in favor of transferring venue.   However, given that this case requires a federal judge to rule on simple legal issues of contract law, this factor receives diminished weight.

g.      Advantages of local court determining local law

If "the merits of an action are unique to a particular locale," courts should weigh that factor in favor of transferring venue to that locale.[55]   In *Westport Insurance Corp. v. California Casualty Management Co.*,[56] the defendant claimed the resolution of the conflict would involve the California Government Code and California Education Code.[57]   As both these laws were unique to California and beyond "a case of straightforward insurance policy application," the court held that the factor weighed in favor of transfer.[58]

---

[52] *Id.*

[53] *Id.* (alterations omitted); *see also Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992) (holding Oklahoma federal court applying Florida breach of contract law "not a significant concern").

[54] Doc. 52, at 18.

[55] *Employers.*, 618 F.3d at 1169.

[56] 2016 WL 1028004 (D. Kan. 2016).

[57] *Id.* at *3.

[58] *Id.*

Unlike the defendant in *Westport*, Boneso does not assert that any law unique to California would apply to the current lawsuit.  Nor does Boneso identify any disadvantage in having a Kansas court determine the present claims due to any difference in Kansas and California contract law.  Because this claim involves a straightforward application of contract law, this factor weighs against transfer.

### h.   Other considerations

Boneso also argues that the Court should consider the relative resources of the parties in weighing the costs of making the necessary proof.  No federal Kansas cases in recent years have dealt with a similar issue.  However, in a recent case from the U.S. District of Utah,[59] the court dealt with a claim between a "closely held family business" and a "substantially larger corporate entity."[60]  The court found that "there is little evidence in the record (beyond the bare assertion of [the family business's] counsel) to indicate a significant disparity between the resources of the parties."[61]  Therefore, the court did not consider the defendant's status as a family company in weighing this factor.[62]

Here, Boneso's status as a family company is irrelevant unless Boneso produces evidence showing the burden out of state litigation would have on its limited finances.  Boneso has not produced any such evidence.  Therefore, the Court finds no reason to consider the relative resources of the parties.  This factor is neutral.

---

[59] *F.H.G. Corp. v. Green Wave, Inc.*, 2017 WL 2728412 (D. Utah 2017).

[60] *Id.* at *7.

[61] *Id.*

[62] *Id.*; *cf. Peters v. Graber Indus., Inc.*, 1992 WL 420915, at *2 (D. Kan. 1992) (weighing relative resources of parties when *individual* sued corporation).

i.      Conclusion regarding Boneso' Motion to Transfer Venue

With five neutral factors and three (including plaintiff's choice of forum) weighing against transfer of venue, only one of the nine factors weighs in favor of Boneso's motion.  However, that factor, the potential conflict of laws, has little weight in this case because of the relatively simple legal issues.  The evidence submitted shows little more than that transferring the case to California would essentially (and impermissibly) shift any inconvenience from Boneso onto Airtex.  Considering the sum of the factors, Boneso's Motion to Transfer Venue is denied.

A.      **Airtex's Motion to Dismiss**

Airtex filed a Motion to Dismiss covering three separate issues: Boneso's negligence claim, express indemnification claim, and request for declaratory judgment.  The Court grants Airtex's motion regarding the first issue, while granting in part and denying in part the latter two.

1.      Negligence counterclaim

Airtex argues that Boneso' negligence claim must be dismissed because it derives the standard of care from contractual obligations, not tort law.  Boneso argues that Airtex breached a duty arising from law outside of its contractual duty and that its negligence claim can coexist alongside its breach of contract claim.  The parties further disagree over whether California or Kansas law applies to the claim.

To adjudicate diversity claims, federal courts must apply "the choice-of-law rules for the state in which it sits."[63]  Regarding tort claims under diversity jurisdiction, the Court applies the "lex loci delicti choice of law rule."[64]  Applied to tort law, lex loci delicti states that courts must

---

[63] *Orchestrate HR, Inc. v. Blue Cross Blue Shield Kansas*, 2019 WL 6330477, at *5 (D. Kan. 2019).

[64] *Anderson v. Commerce Const. Servs., Inc.*, 531 F.3d 1190, 1194 (10th Cir. 2008).

apply the law of the state where the tort took place.[65]   Because Airtex allegedly committed negligence in California, the Court will apply California law in deciding this issue.

Although plaintiffs may plead alternative theories of recovery under Rule 8(d)(2) of the Federal Rules of Civil Procedure, plaintiffs may not recover under two different theories if "such an award would constitute a double recovery."[66]   Accordingly, parties may only bring tort claims for breach of contract claims resulting from more than "mere negligence."[67]   Courts look at whether "conduct causing a breach of contract . . . also violates a duty wholly independent of the contract."[68]   In California's seminal case on the subject, a plaintiff sought to impose a tort claim for infliction of emotional distress that resulted from a breach of contract.[69]   California's Supreme Court held that there is no doubt a "contractual obligation may create a legal duty and the breach of that duty may support an action in tort."[70]   However, that does not mean that breach of contract is equivalent to breach of a legal duty.[71]   Rhetorically, the court asked "is the mere negligent breach of a contract sufficient [to impose tort liability]?   The answer is no."[72]   The court went on to explain:

> Our previous decisions detail the reasons for denying tort recovery in contract breach cases:
> [1] the different objectives underlying tort and contract breach; [2] the importance of

---

[65] *Id.*

[66] *Rogers v. Davis*, 34 Cal. Rptr. 2d 716, 719 (Cal. Ct. App. 1994).

[67] *Erlich v. Menezes*, 981 P.2d 978, 984 (Cal. 1999).

[68] *Valenzuela v. ADT Sec. Servs., Inc.*, 820 F. Supp. 2d 1061, 1069 (C.D. Cal. 2010), *aff'd in part*, 475 F. App'x 115 (9th Cir. 2012).

[69] *Erlich*, 981 P.2d at 981–82.

[70] *Id.* at 983.

[71] *See id.*

[72] *Id.*

predictability in assuring commercial stability in contractual dealings; [3] the potential for converting every contract breach into a tort, with accompanying punitive damage recovery, and the preference for legislative action in affording appropriate remedies.[73]

Therefore, to prevail on tort claims where a breach of contract remedy is available, plaintiffs must show "physical injury . . . breach of the covenant of good faith and fair dealing in insurance contracts . . . wrongful discharge in violation of fundamental public policy . . . or where the contract was fraudulently induced."[74]   Purely economic injury due to a breach of contract, absent the circumstances above, will not give rise to tort liability.[75]

Here, Boneso has pled both a breach of contract claim and a negligence claim.  Boneso alleges that Airtex had a legal duty outside of the contract "to deliver HVAC units that complied with the plans and specifications and industry and other applicable standards."[76]  However, Boneso uses the same language to describe Airtex's duty under the contract.  Furthermore, Boneso pleads the exact same damages (resulting from the same conduct) under both its breach of contract claim and its negligence claim.  Boneso does not allege physical injury, violation of public policy, or fraud in the contract's inducement.  Even if Airtex negligently breached the contract, that does not mean that it is liable in negligence.  To hold Airtex liable in tort for negligently breaching a contract would result in turning nearly every breach of contract claim into a tort claim.

Finally, Boneso argues that its negligence claim should not be dismissed because the parties contest whether the Purchase Order is the controlling contract.  If the Purchase Order is not

---

[73] *Id.* at 984.

[74] *Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 273 (Cal. 2004).

[75] *See Kelomar, Inc. v. Kulow*, 413 F. App'x 981, 983 (9th Cir. 2011).

[76] Doc. 42, at 11.

the contract, then Boneso argues that it would be left without a remedy for Airtex's allegedly substandard HVAC units. The Court does not find this argument particularly persuasive. If the Purchase Order does not govern the parties' agreement, the Purchase Order Acknowledgment does. The Court is skeptical that Boneso has a breach of contract claim under the Purchase Order but not the Purchase Order Acknowledgment. Regardless, the Court need not rule on this matter now. As stated above, parties are free to plead theories in the alternative. Here, Boneso does not bring an alternative claim for negligence but rather one sitting alongside its breach of contract claim. For that reason, the Court rejects Boneso's argument that the negligence claim should survive as an alternative theory to the breach of contract claim. Therefore, because Boneso fails to identify a separate duty giving rise to tort liability, the Court dismisses Boneso's negligence claim with leave to amend.

    2.    *Express indemnity*

    Airtex has also moved to dismiss Boneso's express indemnity claim as unripe due to a lack of any settlement or judgment for which Boneso may be indemnified. Boneso argues that express indemnity claims do not require an actual settlement or judgment. The Court must first determine which state's law applies to the justiciability of express indemnity claims.

    As stated above, federal courts apply the "choice of law rules of the state in which it sits."[77] Therefore, courts must apply the forum's state laws "as to whether a contractual choice-of-law provision is enforceable."[78] In Kansas, where this Court sits, parties may generally contract to

---

[77] *Orchestrate HR*, 2019 WL 6330477, at *5.

[78] *Phillips v. Am. Family Ins. Co.*, 345 F. Supp. 2d 1187, 1198 (D. Kan. 2004) (quotations and citation omitted).

"choose the law applicable to their agreement."[79]   However, if "the law is virtually the same in both states and the claim fail[s] regardless of which state law applie[s]," then the Court may apply either state's law.[80]

Here, the parties dispute whether Airtex's Purchase Order Acknowledgment (POA) or Boneso's Purchase Order (PO) is the contract between the parties.  The POA has a choice of law provision requiring the parties to apply Kansas law, whereas the PO requires the application of California law.  As the parties contest which document is the proper contract, determining which state's law applies would require ruling on the merits of the case.  However, construing Boneso's pleaded facts as true for the purposes of this Motion to Dismiss, the controlling contract is the PO.  Therefore, the Court will apply California law in ruling on Boneso's express indemnity claim.

By definition, "[e]xpress indemnity refers to an obligation that arises by virtue of express contractual language establishing a duty in one party to save another harmless upon the occurrence of specified circumstances."[81]   In other words, one party must reimburse "the other, under specified circumstances, for moneys paid or expenses incurred by the latter as a result of such claims."[82]   In creating indemnity provisions, "parties have great freedom to allocate such responsibilities as they see fit."[83]   When parties' contracts contain express indemnity clauses, "the extent of that duty is

---

[79] *Brenner v. Oppenheimer & Co. Inc.*, 273 Kan. 525, 44 P.3d 364, 374 (2002); *see also* K.S.A. § 84-1-301(a) ("[W]hen a transaction bears reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties.").

[80] *Oklahoma ex rel. Doak v. Acrisure Bus. Outsourcing Servs., LLC*, 529 F. App'x 886, 893 (10th Cir. 2013).

[81] *Prince v. Pac. Gas & Elec. Co.*, 202 P.3d 1115, 1120 (Cal. 2009) (quotations and citation omitted).

[82] *Crawford v. Weather Shield Mfg., Inc.*, 187 P.3d 424, 430 (Cal. 2008).

[83] *Id.*

determined from the contract."[84]  Contract interpretation treats indemnity clauses no differently than other clauses; the point is to ascertain "the mutual intention of the parties."[85]  Contractual language that is "clear and explicit . . . governs its interpretation."[86]  The words within must "be understood in their ordinary and popular sense."[87]  However, in the absence of contractual language specifying the parties' intention to the contrary, California law provides that:

> 1. Upon an indemnity against *liability*, expressly, or in other equivalent terms, the person indemnified is entitled to recover *upon becoming liable*;
> 2. Upon an indemnity against *claims, or demands, or damages, or costs*, expressly, or in other equivalent terms, the person indemnified is not entitled to recover *without payment thereof*.[88]

For example, in *BP West Coast Product, LLC v. Crossroad Petroleum, Inc.*,[89] the plaintiff's contract stated that defendants would indemnify against all "damages, claims, costs, expenses, fines or penalties."[90]  The court interpreted the clause's language to include indemnification against both liability and loss.[91]  However, the plaintiff "allege[d] only that [plaintiff] has become 'obligated' to pay certain undefined sums to [defendant], and [did] not indicate that [plaintiff] has

---

[84] *Valley Crest Landscape Dev., Inc. v. Mission Pools of Escondido, Inc.*, 189 Cal. Rptr. 3d 259, 268 (Cal. Ct. App. 2015).

[85] *Cont'l Heller Corp. v. Amtech Mech. Servs., Inc.*, 61 Cal. Rptr. 2d 668, 670 (Cal. Ct. App. 1997).

[86] Cal. Civ. Code § 1638.

[87] Cal. Civ. Code § 1644.

[88] Cal. Civ. Code § 2778. (emphasis added).

[89] 2013 WL 12377978 (S.D. Cal. 2013).

[90] *Id.* at *5 (quotations and citation omitted).

[91] *Id.*

made any payments to satisfy its purported liability."[92]   Accordingly, the court dismissed the plaintiff's claim as "unripe."[93]

Here, the express language of the PO provides that "Seller . . . will indemnify, hold harmless and defend Buyer and Owner against any and all losses, damages, liabilities and claims of any kind whatsoever, including actual attorneys' fees . . . which arise directly or indirectly out of their performance or nonperformance of this purchase order."[94]   However, the contract does not specify when Boneso becomes entitled to recover against Airtex under the indemnity clause. Therefore, under California's rules of interpretation, Boneso only may force Airtex to indemnify them against liability and losses once they accrue.

Going beyond the plaintiff in *West Coast Products*, Boneso has not even had a claim brought against it, much less made a payment resulting due to a settlement or judgment.  Boneso merely states that Watts *will* bring a claim for the liquidated damages USACE is asserting against Watts.  For liability it has not yet incurred, Boneso has and needs no remedy.  However, unlike *West Coast Products*, Boneso pleads actual losses in the form of Watts withholding funds from Boneso because of Airtex's breach of contract.  Under California law, Boneso has suffered actual loss, which entitles it to recovery through its express indemnity clause.  Furthermore, Boneso also lists attorneys' fees spent on the current case as costs covered by the express indemnity clause. Both losses and attorneys' fees are covered by the clear and explicit language of the contract, and therefore, Boneso may recover for both.  In sum, the Court grants Airtex's Motion to Dismiss

---

[92] *Id.*

[93] *Id.*

[94] Doc. 40, Ex. 4, at 3.

Boneso's express indemnity claim regarding Boneso's speculative future liability while denying Airtex's Motion to Dismiss regarding all losses Boneso has already incurred.

### 3. Declaratory judgment

Airtex argues that Boneso's request for declaratory judgment must be denied because each item on which Boneso requests declaratory relief is addressed elsewhere in this lawsuit or is unripe for adjudication.  In contrast, Boneso contends that declaratory judgment is appropriate as there is an ongoing dispute between the parties regarding which contract controls.

Under the Declaratory Judgment Act, federal district courts, "[i]n a case of actual controversy within its jurisdiction . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[95] "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[96]

If the parties' "controversy seem[s] to depend" on a "yet-unaccomplished future contingency," then a constitutionally justiciable controversy does not exist.[97]  For example, in *Mount Vernon Fire Insurance Co. v. Okmulgee Inn Venture, LLC*,[98] three of a bar's patrons suffered gunshot wounds in the bar and sued the business.[99]  The bar's insurance company

---

[95] 28 U.S.C. § 2201(a).

[96] *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quotations and citation omitted).

[97] *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1244 (10th Cir. 2008); *see also Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (quotations and citation omitted).

[98] 451 F. App'x 745 (10th Cir. 2011).

[99] *Id.* at 747–48.

requested that the court issue declaratory judgment on whether an insurance company had to indemnify a bar under the parties' contract.[100]   The court held that "[b]ecause the victims have yet to establish Okmulgee's liability for any claims, the question of Mt. Vernon's duty of indemnification [under the contract] is not ripe for adjudication."[101]

However, even if the facts show an actual controversy, district courts may exercise discretion in declining to issue declaratory relief.[102]   The factors a district court must consider in deciding whether to issue declaratory relief are:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to res judicata; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.[103]

Airtex argues that applying these factors necessarily leads to a dispositive sixth factor for the Court to consider.   Citing persuasive authority from Tenth Circuit district courts, Airtex argues that the court should dismiss any requests for declaratory judgment "where a plaintiff seeks declaratory relief that would resolve the same issues raised by other claims brought in the same

---

[100] *Id.* at 747.

[101] *Id.* at 749; *see generally State Farm Fire & Cas. Co. v. Telecomm Consultants, Inc.*, 757 F. App'x 726, 728 (10th Cir. 2018) (ruling on ripe declaratory judgment action where lawsuits had already been brought against the party seeking indemnification).

[102] *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) ("If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action.").

[103] *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994) (quotations and citation omitted).

action."[104]  Airtex has not cited any circuit court precedent or cases from Kansas courts holding that a plaintiff may not request declaratory relief alongside a breach of contract claim.

The Court must first consider whether Boneso asks for declaratory judgment of an actual controversy.  Boneso requests that the Court declare that (1) the PO is the contract between the two parties; (2) Airtex is required to indemnify Boneso under the terms of the PO; (3) Airtex is liable to Boneso for any liability Boneso incurs due to the Airtex's breach of contract; (4) all the terms of the PO are valid and enforceable; and (5) any other relief the Court sees fit to grant.

As to Boneso's first, fourth, and fifth requests, the parties vehemently contend whether the PO or the POA controls their legal relationship.  Their significant legal interests depend on the resolution of this dispute.  Accordingly, the Court may issue declaratory judgment as to which document is the real contract as this is an actual controversy.

However, Boneso also requests that the Court require Airtex to indemnify and be liable to Boneso for any claims that might be asserted against it.  As stated above, no party has asserted, much less established, any claims against Boneso.  Like the plaintiffs request for declaratory judgment in *Mount Vernon*, whether Airtex must indemnify Boneso or cover Boneso's liability is an issue unripe for adjudication.  Therefore, the Court dismisses Boneso's request for declaratory judgment regarding Airtex's required indemnification and potential liability.

Even over the issues presenting actual controversies, Airtex argues that the court should decline to give declaratory relief.  The Court now considers how each of the *Mhoon* factors apply to the case.  First, the Court asks "whether a declaratory action would settle the controversy." Ruling on whether the PO is the governing contract and whether its terms are valid and enforceable

---

[104] *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1195 (D. Colo. 2018).

would settle the parties' contentions on which contract controls.  Therefore, this factor weighs in favor of issuing declaratory judgment.

Second, the Court must consider "whether it would serve a useful purpose in clarifying the legal relations at issue."  The parties' only legal relations exist through either the PO or the POA.  Deciding which one forms the valid contract between the parties would undoubtedly clarify the exact legal obligations each owes the other.  Therefore, this factor also weighs in favor of the Court issuing declaratory judgment.

Third, the Court must weigh, "whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to res judicata."  Neither party alleges that any concurrent action is taking place or will take place in state court.  Therefore, there is no other state action to "race" or "fence in" through declaratory judgment.  Accordingly, this factor also weighs in favor of the Court issuing declaratory judgment.

Fourth, the Court must consider "whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction."  As stated above, no concurrent state action progresses between the parties.  There is no risk of friction between state courts and this federal Court.  This factor favors the Court issuing declaratory judgment.

Finally, the Court asks "whether there is an alternative remedy which is better or more effective."  Here, Airtex and Boneso have competing breach of contract claims, each claiming their preferred document forms the contract between the parties.  Undoubtedly, each of those actions would resolve the question without declaratory judgment.  Furthermore, declaratory judgment alone will not suffice to conclude each of the parties' claims, such as whether either party breached the controlling contract.  Nevertheless, declaring which contract controls would be

a step towards that ultimate resolution.  Therefore, this factor does not favor or disfavor the Court issuing declaratory judgment.

All told, four out of five of the *Mhoon* factors support the Court exercising declaratory judgment in this case.  Furthermore, the Court declines to accept Airtex's argument that declaratory judgments are improper when brought alongside claims that would resolve the same issues.  Boneso may reap no real benefit from pursuing declaratory judgment as opposed to a normal breach of contract claim.  Nevertheless, the burden is on Airtex to show why the claim should be dismissed, not on Boneso to show why it should remain.  Airtex fails to demonstrate why this Court should not rule on the first, fourth, and fifth of Boneso's requests for declaratory judgment.  Regarding those issues, Airtex's Motion to Dismiss is denied.  However, regarding Boneso's request that Airtex indemnify it and assume its non-existent liability, Airtex's Motion to Dismiss is granted.

### IV. Conclusion

Boneso has failed to show that Watts in an indispensable party.  Boneso also fails to demonstrate that transferring venue would not simply transfer any inconvenience onto Airtex.  Regarding Airtex's Motion to Dismiss, Boneso's negligence and express indemnity claims are, respectively, unsupported by a legal duty and unripe in regard to future liability and therefore are dismissed.  However, Boneso has asserted a valid express indemnity claim for losses already suffered.  Likewise, Boneso's request for declaratory judgment regarding which contract controls is valid.

**IT IS THEREFORE ORDERED** that Boneso's Motion to Dismiss for Failure to Join a Party and Alternatively Motion to Transfer Venue (Doc. 40) is **DENIED**.

**IT IS FURTHER ORDERED** that Airtex's Motion to Dismiss (Doc. 49) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Airtex's Motion for Oral Argument (Doc. 58) is **DENIED.**

**IT IS SO ORDERED.**

Dated this 21st day of August, 2020.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE