IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| AIRTEX MANUFACTURING LLLP, | |
| Plaintiff, | |
| v. | Case No. 2:19-cv-02269-HLT-JPO |
| BONESO BROTHERS CONSTRUCTION, INC., | |
| Defendant. | |

**MEMORANDUM AND ORDER**

This is a contract dispute between Plaintiff Airtex Manufacturing and Defendant Boneso Brothers Construction. Airtex alleges breach of contract and unjust enrichment against Boneso. Boneso asserts various counterclaims, including a claim for declaratory judgment regarding which document is the controlling contract between the parties. Boneso seeks partial summary judgment that a 2012 agreement controls and contends that ruling would require this case to either be sent to arbitration or transferred to California. For the reasons stated below, the Court denies Boneso's motion because it seeks a ruling on a claim it has not asserted and there are disputed questions of fact. The Court also finds that neither arbitration nor transfer is appropriate given disputed questions of fact. Boneso's request for attorneys' fees is denied.

**I.    BACKGROUND**[1]

This dispute arises out of a construction project for the United States Army Corps of Engineers ("USACE") in California. The project was originally bid in 2012. But it was canceled

---

[1] For purposes of summary judgment, the Court considers the following undisputed facts. The Court notes that it appears Boneso's response to Airtex's additional statement of facts is off by one beginning at additional fact 17. This is based on the fact that Boneso's reply contains responses to 35 additional facts where there are only 34 and also on the context of the responses. Although the Court concludes there are disputed issues of fact, this is not based on the apparent misnumbering.

and rebid in 2014. The USACE entered into a contract with Watts Constructors, LLC. Watts then subcontracted with Boneso. Boneso subsequently sought an agreement with Airtex for Airtex to supply HVAC units for the project. In other words, Watts is the contractor, Boneso is the sub-contractor, and Airtex is the sub-sub-contractor. *See* Doc. 73 at 1.

### A. 2012 Negotiations

In 2012, Airtex sent a quote to Boneso to manufacture and supply HVAC units for the project. In response, Boneso sent a purchase order to Airtex. Airtex then sent a purchase order acknowledgement to Boneso. Airtex, through its division manager Henry Berman, also sent Boneso a memorandum stating that the terms of Boneso's purchase order were in conflict with the terms of Airtex's quote and purchase order acknowledgment. Airtex rejected Boneso's purchase order. In response, Boneso rejected Airtex's purchase order acknowledgment.

Airtex, again through Berman, then sent another memorandum to Boneso, which addressed some terms and conditions the parties disagreed on and tried to reach a mutual solution. Boneso sent Airtex a revised purchase order ("2012 Revised Purchase Order"), along with an email stating, "As discussed previously we not be [sic] incorporating your Purchase Order Acknowledgement and or EA Terms and Conditions as an attachment to our Purchase Order as that is not consistent with our Company Policies." No one from Boneso ever told Berman that Boneso would accept Airtex's purchase order acknowledgment or Airtex's additional terms and conditions. But Boneso's 2012 Revised Purchase Order did reflect the changes requested by Airtex to Boneso's original purchase order. Airtex did not make any other revisions to the 2012 Revised Purchase Order, and it was approved by Airtex's president.

The 2012 Revised Purchase Order included a term regarding attorneys' fees arising out of disputes. The 2012 Revised Purchase Order also included the following provision: "This purchase

2

order consists of this Agreement, and the applicable terms, conditions, plans and specifications of the Prim [sic] Contract." As discussed below, the parties dispute what "Prim Contract" refers to.[2]

The USACE eventually shut down the project in 2012.

### B. 2014 Negotiations

In 2014, the USACE renewed the project. Airtex again sent Boneso a quote to supply HVAC units. The quote stated, "Buyer may offer to purchase the goods quoted herein by submitting a purchase order. Such purchase order is subject to the Terms established by any financing of this order by [Airtex] and the Terms and Conditions of [Airtex]'s Purchase Order Acknowledgment." In response, Boneso sent Airtex a purchase order ("2014 Purchase Order").

There are differences between the 2014 Purchase Order and the 2012 Revised Purchase Order. The total price of the 2014 Purchase Order was $1,449,398.40, while the total price in the 2012 Revised Purchase Order was $1,117,200. The shipping instructions were "FOB Truck" in the 2014 Purchase Order, while the instructions were "FOB Destination" in the 2012 Revised Purchase Order." The 2012 Revised Purchase Order also included a reference to "S.C. Anderson, Inc." And the 2012 Revised Purchase Order identifies different equipment model numbers than what Airtex ultimately manufactured and supplied for the project in 2014.

But like the 2012 Purchase Order, the 2014 Purchase Order included a provision regarding attorneys' fees arising out of disputes and stated: "This purchase order consists of this Agreement, and the applicable terms, conditions, plans and specifications of the Prim [sic] Contract." Again, the parties dispute what the "Prim Contract" is. Airtex contends it refers to the contract between the USACE and Watts (which does not contain an arbitration provision). Boneso contends it refers

---

[2] The parties seem to agree that "Prim Contract" is a typo, and that the intended phrase is "Prime Contract." But as discussed below, the parties dispute which contract is the prime contract.

to the contract between Watts and Boneso (which does contain an arbitration provision). Airtex and Boneso never discussed arbitration when negotiating the project in 2012 or 2014.

The parties also dispute whether Airtex sent Boneso a 2014 Purchase Order Acknowledgment (hereinafter referred to as the "2014 Acknowledgment") in response to the 2014 Purchase Order. Airtex maintains it sends out acknowledgements as a matter of course for every transaction, and Airtex has a copy of the 2014 Acknowledgment in its files. But it has searched its records to find evidence that the 2014 Acknowledgment was sent to Boneso and cannot find any evidence it was. Airtex has provided an affidavit by Berman stating that it "would not surprise [him]" if the 2014 Acknowledgment was mailed or emailed to Boneso, that it was lost in the mail, that it was sent via email but later deleted by both parties, or that Boneso did in fact receive it but has not produced it in discovery. *See* Doc. 97-6 at 3. But Berman also testified that it would not surprise him if the 2014 Acknowledgment had never even been sent to Boneso. Berman was the only Airtex representative communicating with Boneso about this contract.

The 2014 Acknowledgment also states: "ANY MODIFICATIONS OF THIS PURCHASE ORDER ACKNOWLEDGMENT MUST BE NOTED AND RETURNED TO SALES OFFICE ABOVE WITHIN THREE (3) DAYS OF RECEIPT OF THIS ACKNOWLEDGEMENT." Airtex never received any written objections, though again, the parties dispute whether the 2014 Acknowledgment was ever sent to Boneso. The 2014 Acknowledgement also states that a signature from a buyer is not required if the buyer's credit application is on file. As of the date of the 2014 Acknowledgement, Airtex had Boneso's credit application on file. The credit application states that "Buyer agrees to be bound by the terms and conditions of [Airtex's] Purchase Order Acknowledgement ('POA')." But Boneso had crossed out "conditions of [Airtex's] Purchase

4

Order Acknowledgment," and crossed out other provisions that said, "Buyer expressly agrees to said terms and conditions" and "upon Buyer's acceptance of said terms and conditions."

### C. Airtex's Corporate Representatives' Testimony and Affidavits

Paul Hansen testified on Airtex's behalf as corporate representative. One of the topics Hansen was designated to testify on was "[t]he contractual relationship between Boneso and Plaintiff, all contracts between Boneso and Plaintiff, the negotiation of all said contracts and all persons having knowledge of the contractual relationship and the negotiation thereof." Berman also testified. Berman and Hansen both testified that it was their understanding that the agreement between Boneso and Airtex in 2014 was the 2012 Revised Purchase Order with the additional term that Boneso would pay Airtex within five days of received payment. But in response to Boneso's motion, both Berman and Hansen submitted affidavits stating that "Airtex did not manufacture or supply HVAC units for the 2014 Project based on the '2012 Revised Purchase Order.'"

### D. Claims in this Case

Airtex subsequently sued Boneso for breach of contract and unjust enrichment, alleging that Boneso only paid for a portion of items delivered under the parties' agreement. *See* Doc. 1-1.[3] Airtex alleges Boneso owes it $1,372,151.25 under the agreement, as well as attorneys' fees and costs. *Id.* Boneso answered and asserted counterclaims. *See* Doc. 42. Relevant to this motion is Boneso's counterclaim for declaratory judgment, which seeks a declaratory ruling that the 2014 Purchase Order is the contract between the parties. *Id.* at 16-18.[4]

---

[3] Airtex originally sued in state court in Johnson County, Kansas. Boneso removed the case to federal court. *See* Doc. 1.

[4] This case was previously assigned to Judge Eric Melgren. Judge Melgren granted in part and denied in part a motion to dismiss by Airtex, finding that two of Boneso's requests for declaratory judgment were unripe for adjudication. Doc. 73 at 26. In that same order, Judge Melgren also denied Boneso's motion to transfer this case to California. *Id*. at 17.

5

A key dispute in this case is what document is the controlling contract between Airtex and Boneso: the 2012 Revised Purchase Order (with or without some additional terms); the 2014 Purchase Order; or the 2014 Acknowledgment. Airtex claims the 2014 Acknowledgement controls. Boneso claims the 2014 Purchase Order controls. *See* Doc. 73 at 26 (noting "the parties vehemently contend whether the PO or the POA controls their legal relationship"). But for purposes of its partial summary-judgment motion, Boneso argues the 2012 Revised Purchase Order should be deemed the controlling contract for now, which would require the case to be sent to arbitration or transferred to federal court in California, and then one of those two bodies will decide which document actually controls.

## II.   STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In applying this standard, courts view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a 'reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III.   ANALYSIS

Boneso first seeks summary judgment on its declaratory-judgment claim in the form of a ruling that the 2012 Revised Purchase Order is the controlling contract. Second, Boneso asks that

this matter be submitted to arbitration under an arbitration clause in the Watts-Boneso contract, which Boneso contends is incorporated into the 2012 Revised Purchase Order. Third, Boneso alternatively requests that this dispute be transferred to California federal court under a mandatory forum-selection clause in the Watts-Boneso contract. Fourth, Boneso contends it is entitled to attorneys' fees incurred in filing this motion, the previous motion to transfer, and for conducting discovery into the mandatory forum-selection clause.

### A.      Controlling Contract

There are effectively three potential contracts at issue in this case: the 2012 Revised Purchase Order, the 2014 Purchase Order, and the 2014 Acknowledgment. Boneso seeks a declaration that the 2014 Acknowledgment is not the controlling agreement and that the 2012 Revised Purchase Order is the controlling agreement, but only "for the purposes of this motion." Doc. 91 at 16.

Notably, Boneso "still contends that its 2014 Purchase Order is the contract between the parties." Doc. 91 at 17 n.1. But it nevertheless seeks a ruling that the 2012 Revised Purchase Order is the contract between the parties so that the Court can use the arbitration or forum-selection provisions allegedly in the 2012 Revised Purchase Order to compel arbitration or transfer this case to California, where either an arbitrator or a California federal court will then decide which contract actually governs in this case. *Id.* Boneso's motion on this issue is denied for two reasons.

First, Boneso's motion seeks summary judgment on a claim that is not asserted in this case. Boneso's counterclaim for declaratory judgment seeks a ruling that the 2014 Purchase Order is the contract between Boneso and Airtex. *See* Doc. 42 at 17; Doc. 91 at 2. Boneso has not abandoned or altered this claim and still intends to pursue it. Doc. 91 at 17 n.1 ("Again, Boneso still contends that its 2014 Purchase Order is the contract between the parties."). But Boneso does not seek a

ruling to this effect. Instead, Boneso moves for a ruling that the 2012 Revised Purchase Order is the contract between the parties, even though Boneso has never—and still does not—assert that claim and does not intend to actually abide by that ruling. *See id.* Boneso only seeks this ruling so that it can move this case to a different forum to get a different decision about what contract actually controls from a different decisionmaker. This is not an appropriate matter for summary judgment.[5]

Second, Boneso has not demonstrated there is no genuine dispute of fact about whether the 2012 Revised Purchase Order is in fact the controlling contract. Boneso's argument that the 2012 Revised Purchase Order is the controlling contract is based solely on testimony by Berman and Hansen that the agreement reached between Boneso and Airtex in 2014 "is reflected" in the 2012 Revised Purchase Order plus an additional term regarding payment. Doc. 91-1 at 6, 7; Doc. 91-3 at 12. Airtex contends this testimony just reflects that Berman and Hansen understood that the terms of the controlling contract in 2014—whichever document that is—were the same as the terms in the 2012 Revised Purchase Order (plus one additional term regarding payment). In other words, the terms were very nearly identical, but that doesn't make the 2012 Revised Purchase Order the literal controlling contract.

---

[5] The Court likewise questions whether Boneso's motion states an appropriate claim for declaratory relief. Under the Declaratory Judgment Act, a "district court is not obliged to entertain every justiciable declaratory claim brought before it." *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982 (10th Cir. 1994). One of the prevailing considerations in deciding whether to do so is whether deciding the declaratory issue will "clarify or settle legal relations in issue." *Id.* at 983. Judge Melgren found the factors in *Mhoon* justified the exercise of declaratory judgment in this case. Doc. 73 at 28. Boneso cites this ruling in arguing that the Court should grant its motion. Doc. 91 at 15. But Judge Melgren's ruling was based on Boneso's claim that the 2014 Purchase Order is the controlling contract, and he found that ruling on whether the 2014 Purchase Order "is the governing contract and whether its terms are valid and enforceable would settle the parties' contentions on which contract controls." Doc. 73 at 26-27. The same cannot be said for the ruling Boneso seeks in its motion. By Boneso's own admission, issuing the declaratory relief currently sought by Boneso would not settle the dispute between the parties about which contract controls. *See* Doc. 91 at 17 n.1.

Airtex also points to differences between the 2012 Revised Purchase Order and the 2014 Purchase Order, Airtex's performance under the contract in 2014, and affidavits from Berman and Hansen stating that "Airtex did not manufacture or supply HVAC units for the 2014 Project based on the '2012 Revised Purchase Order.'" *See* Doc. 97-3 at 1; Doc. 97-6 at 3. Boneso contends these are "sham affidavits." The Court disagrees given the nature of the deposition testimony. *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 973 (10th Cir. 2001) (noting that affidavits are not automatically disregarded because they contradict prior testimony). Further, Boneso's contention that Airtex is trying to "artificially create[]" a fact issue, Doc. 107 at 6, about whether the 2012 Revised Purchase Order is the controlling contract is undercut by the fact that not even Boneso contends the 2012 Revised Purchase Order is the controlling contract.[6] *See* Doc. 91 at 17 n.1.

For these reasons, Boneso's motion for partial summary judgment is denied.

**B.     Arbitration**

Even if the Court were to accept Boneso's premise that the 2012 Revised Purchase Order should be deemed the controlling contract between Airtex and Boneso, at least for now, it would not find that arbitration should be compelled on the current record.[7]

---

[6] Airtex opposes Boneso's motion regarding which contract controls because there is a genuine issue of material fact on that issue, though its argument is more directed at whether the 2014 Acknowledgment controls. The Court notes that Airtex has not been able to muster much evidence at all that the 2014 Acknowledgment was ever sent to Boneso or that Boneso agreed to it. Indeed, the only evidence Airtex has come forward with regarding the existence of the 2014 Acknowledgment is that it was Airtex's policy to send acknowledgments, and though it has no proof the 2014 Acknowledgment was ever sent to Boneso, its corporate representative wouldn't be surprised if it either was sent, was not sent, got lost, or Boneso is lying about receiving it. The Court has concerns about whether this is sufficient to create an issue of fact about whether the 2014 Acknowledgment is the controlling contract. But given the ruling above, the Court need not reach that question. Further, even if the Court were to definitively conclude that the 2014 Acknowledgment was not the contract between the parties, leaving only the 2012 Revised Purchase Order or the 2014 Purchase Order as possibilities, the Court would still find that neither arbitration nor transfer is appropriate, as discussed below.

[7] The same analysis regarding arbitration or transfer would apply even if the Court determined the 2014 Purchase Order was the controlling contract because both the 2012 Revised Purchase Order and the 2014 Purchase Order include the same provision incorporating the "applicable terms" of the "Prim Contract."

9

Arbitration is a question of contract, and "[n]o party can be compelled to submit a dispute to arbitration without having previously agreed to so submit." *Bolden v. AT & T Servs., Inc.*, 350 F. Supp. 3d 1029, 1031 (D. Kan. 2018). Where there is no material dispute about the facts regarding the existence of an agreement to arbitrate, a district court can decide as a matter of law that arbitration is proper. *Id*. Otherwise, a trial on the existence of an agreement to arbitrate is required. *Id.* The party seeking to enforce arbitration bears the initial burden of establishing that arbitration should be compelled. *See Phox v. Atriums Mgmt. Co.*, 230 F. Supp. 2d 1279, 1282 (D. Kan. 2002).

Notably, "a court cannot order arbitration of a particular dispute unless it is 'satisfied that the parties agreed to arbitrate that dispute.'" *Fedor v. United Healthcare, Inc.*, 976 F.3d 1100, 1106 (10th Cir. 2020) (quoting *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 297 (2010) (emphasis in original)). "To satisfy itself that such agreement exists, the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce." *Granite Rock*, 561 U.S. at 297. "[W]hether an arbitration agreement was formed between the parties must always be decided by a court, regardless of whether the alleged agreement contained a delegation clause[8] or whether one of the parties specifically challenged such a clause." *Fedor*, 976 F.3d at 1105.

Here, even if the Court were to accept that the 2012 Revised Purchase Order was the controlling agreement between the parties, there remains a questions of fact about whether (1) the 2012 Revised Purchase Order's reference to the "Prim Contract" means the Watts-Boneso

---

[8] Threshold issues of arbitrability are typically handled by the arbitrator where a delegation provision is included or invoked. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). But neither party raises the issue of a delegation provision in this case, and the issue here is the very existence of the arbitration agreement itself, which is a question for a court to decide. *See Fiola v. VALIC Fin. Advisors, Inc.*, 2020 WL 1700334, at *3 n.3 (D. Kan. 2020); *see also Fedor*, 976 F.3d at 1105.

contract, as Boneso contends it does, or some other contract; (2) whether the arbitration provision in the Watts-Boneso contract is an "applicable term" that would be incorporated into the 2012 Revised Purchase Order; and (3) whether the arbitration provision in the Watts-Boneso contract would cover the dispute between Airtex and Boneso.

First, the 2012 Revised Purchase Order incorporates the "applicable terms, conditions, plans and specifications of the Prim Contract." Doc. 91-6 at 4. But the parties dispute what the "Prim Contract" refers to—either the Watts-Boneso contract (which contains an arbitration provision) or the USACE-Watts contract (which does not contain an arbitration provision).[9] Boneso points to some evidence that the "Prim Contract" is the former, including other references in the 2012 Revised Purchase Order to a "Prime Contract" that only make sense if referring to the Watts-Boneso contract. But Airtex points to evidence suggesting it could be the latter, including that a prime contract is typically viewed as the contract between the project owner and the contractor. The Watts-Boneso contract, which Boneso contends is the "Prim Contract," also refers to the USACE-Watts contract as the prime contract. On this record, the Court cannot conclude that the "Prim Contract" refers to the Watts-Boneso contract.

Second, even if the "Prim Contract" was the Watts-Boneso contract, there is a disputed question of fact about whether the arbitration provision is an "applicable term[], condition[], plan[] or specification[]" that would be incorporated in to the 2012 Revised Purchase Order. As Airtex notes, the 2012 Revised Purchase Order itself contains an arbitration provision,[10] which raises the

---

[9] Again, the Court refers to the "Prim Contract" to distinguish it as the provision in the 2012 Revised Purchase Order. It does not imply that the typo itself gives rise to a genuine question of fact.

[10] This provision limits Boneso's arbitration to disputes valued at $500,000 or less, which is less than the amount claimed in this case. Doc. 91-6 at 5.

question of whether the parties intended incorporate a separate arbitration provision into an agreement that already had one.

Third, even if the "Prim Contract" was the Watts-Boneso contract, and the arbitration provision in the Watts-Boneso contract was an "applicable term" incorporated into the 2012 Revised Purchase Order, there is a disputed question of fact about whether that provision would cover the claims in this case. The arbitration provision in the Watts-Boneso contract states:

> For claims not involving the acts, omissions or otherwise the responsibility of the Owner under the prime contract, the parties hereto agree that any and all claims, controversies, or disputes <u>arising out of or relating to this contract/agreement</u>, or the breach thereof, shall be fully and finally be resolved by arbitration, in accordance with the Arbitration Rules, Procedures, and Protocols of Dispute Prevention & Resolution, Inc., located in San Francisco, CA.

Doc. 91-10 at 11 (emphasis added). Boneso only cites the first portion of this sentence about claims not involving the acts or omissions of the owner to argue this provision covers the dispute between Airtex and Boneso. But this provision also is limited to claims "arising out of or relating to this contract/agreement," presumably meaning the Watts-Boneso contract. Boneso makes no effort to show that the dispute between Boneso and Airtex in this case arises out of or relates to the Watts-Boneso contract. As the party seeking to compel arbitration, this is Boneso's burden to show. *See Phox*, 230 F. Supp. 2d at 1282. Because the Court cannot determine on this record that the parties agreed to arbitrate this dispute, it cannot compel arbitration at this stage. *See Fedor*, 976 F.3d at 1106; *Granite Rock*, 561 U.S. at 299 ("[O]ur precedents hold that courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration

agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue.").[11]

### C. Transfer

Boneso alternatively renews its previously denied motion to transfer venue. This renewed motion is premised on Boneso's contention that the 2012 Revised Purchase Order controls and that it incorporated a mandatory forum-selection provision in the Watts-Boneso contract. But the Court has denied Boneso's motion to declare the 2012 Revised Purchase Order as the governing contract, and also found that there is a factual dispute about whether the "Prim Contract" refers to the Watts-Boneso contract, and if so, which of its "applicable terms" were incorporated into the agreement between Airtex and Boneso. Accordingly, there are no new circumstances that would justify granting Boneso's renewed request to transfer this case to California, which Judge Melgren previously denied. *See* Doc. 73 at 17.

### D. Attorneys' Fees

Given the rulings in this order, Boneso's request for attorneys' fees is denied.

## IV. CONCLUSION

THE COURT THEREFORE ORDERS that Defendant's Motion for Partial Summary Judgment on Count VI of its Counterclaim and Motion to Compel Arbitration, and Alternative Motion to Transfer (Doc. 90) is DENIED.

IT IS SO ORDERED.

Dated: July 28, 2021            /s/ *Holly L. Teeter*
                                HOLLY L. TEETER
                                UNITED STATES DISTRICT JUDGE

---

[11] Airtex additionally opposes Boneso's motion because the request to arbitrate is untimely and the arbitration provision in the Watts-Boneso contract was not clearly and unequivocally incorporated into any agreement Boneso had with Airtex. The Court does not reach these alternative arguments given the rulings in this order.